**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CYNTHIA BOWMAN,

                Plaintiff,

    v.

EAST ORANGE VETERANS AFFAIRS –
NEW JERSEY MEDICAL CENTER, et al.,

                Defendants.

Civil Action No.: 23-3563

**OPINION & ORDER**

**CECCHI, District Judge.**

Before the Court is the motion of East Orange Veteran Affairs – New Jersey Medical Center, Pamela LeDeaux, and Doreen Barrow (collectively, "Defendants") to dismiss (ECF No. 40; *see also* ECF No. 40-1 ("Br.")) plaintiff Cynthia Bowman's ("Plaintiff") third amended complaint. ECF No. 37 ("TAC"). Plaintiff opposed the motion (ECF No. 50 ("Opp.")), and Defendants replied. ECF No. 55 ("Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

**I.     BACKGROUND**[1]

    **A.     Factual History**

Plaintiff has served as Chief of Pathology and Laboratory Medicine Services at the Department of Veterans Affairs ("VA") at two hospitals in New Jersey since 2019. TAC ¶¶ 1–2, 12. In the TAC, she asserts that she has suffered from various types of mistreatment throughout her time at the VA.

        *i.     Health, Safety, and Operational Issues at the VA*

---

[1] The following facts are accepted as true for the purposes of the motion to dismiss for failure to state a claim.

1

Plaintiff asserts that she has repeatedly raised health and safety concerns to VA legal, management, and human resources ("HR") throughout her time with the agency. *Id.* ¶¶ 15, 44. In her view, the VA has repeatedly failed to address these serious issues. *Id.* ¶¶ 16, 28–29, 38–41. In response, she has instead been "targeted, blamed, pressured, and . . . scapegoated . . . for the VA's own failures to manage its personnel and operations." *Id.* ¶ 42. She alleges that VA legal and HR have taken an "increasingly hostile, aggressive, adversarial and confrontational tone" with her, such as by telling her to "put [her] big girl pants on." *Id.* ¶¶ 43, 47.

Plaintiff asserts that not only has the VA failed to address her concerns, but it "simply turns to [Plaintiff] to clean" up these issues "without any real support from [the] VA's senior Legal, Human Resources, or management." *Id.* ¶ 44. In fact, at one meeting, VA leadership told her that "she was ultimately responsible for everything and that the condition of the laboratories was also her ultimate fault." *Id.* Several VA employees in attendance "commented about how appalled they were with the way she had been singled out, spoken to, and treated." *Id.*

ii.    *Administrative Investigation into Plaintiff*

Beyond these issues, Plaintiff contends that she was subject to an improper administrative investigation. In May 2021, Plaintiff learned that she was being investigated for allegedly creating a hostile work environment. *Id.* ¶ 17. As a result of the investigation, Plaintiff was temporarily "removed . . . from her role and responsibilities." *Id.* ¶ 1. She subsequently appeared with legal counsel before the Administrative Investigation Board ("AIB") to provide a statement and answer the AIB's questions. *Id.* ¶ 18. Plaintiff alleges that the AIB then did not complete its investigation within the requisite forty-five-day window. *Id.* ¶¶ 18–20. She also asserts that she was not permitted to review and correct her testimony before it was submitted to the record, despite the AIB promising her that she would have the opportunity to do so. *Id.* at 18–19.

2

In August 2021, Plaintiff met with a supervisor who provided her with a memorandum that described the AIB's final investigative report. *Id.* ¶ 20. Although Plaintiff was only given the report to review in person during that meeting, she alleges that there was no evidence in the report of any improper conduct on her part. *Id.* ¶¶ 21, 24–25. Nevertheless, the AIB sustained the allegations that Plaintiff had created a hostile work environment. *Id.* ¶ 24. As a result, Plaintiff was required to complete several trainings and was then permitted to return to her role approximately three months after the investigation began. *Id.* ¶¶ 1, 17, 24, 28.

Following the August 2021 meeting with her supervisor, Plaintiff's legal counsel filed a Freedom of Information Act ("FOIA") request for the AIB report, as well as for all evidence presented to the AIB and other related documents. *Id.* ¶ 21. Plaintiff asserts that despite numerous follow up requests, the VA did not forward a copy of the AIB report and Plaintiff's testimony transcript until June 2022. *Id.* ¶ 22. The VA did not provide the other requested materials. *Id.*

Plaintiff further alleges that others at the VA raised concerns that the AIB investigation went "too far" and was unfair. *Id.* ¶ 33. Additionally, a member of the AIB panel told Plaintiff that another AIB staff member "overstepped her authority in pursuing the AIB against [Plaintiff], was not objective about [Plaintiff], and that 'it never should have happened.'" *Id.* ¶ 36.

### iii.    *Negative Performance Evaluation and Bonus*

Plaintiff also asserts that in January 2024, the VA changed the policy and targets by which medical leadership, including Plaintiff, were evaluated "without notice or justification." *Id.* ¶ 50. As a result, her performance evaluation was downgraded for 2023. *Id.* She also allegedly received a smaller bonus than she expected. *Id.*

### iv.    *Disciplinary Action Against Plaintiff*

In March 2024, the VA notified Plaintiff that it was imposing a disciplinary charge on her based on her lack of responsiveness and other behavior during union negotiation sessions with the

VA. *Id.* ¶¶ 54–55. She asserts that she "is being targeted as a scapegoat" by the VA but that she "intends to contest" this proposed disciplinary action. *Id*. ¶¶ 55, 57.

> *v.    Response to Her Federal Tort Claims Act Notice of Claims*

Plaintiff provided notice to the VA of a claim under the Federal Tort Claims Act ("FTCA") in May 2023 and alleges that the agency failed to properly and timely address this claim. *Id.* ¶ 74. Although the VA did not respond for sixteen months despite promising that it would do so within six months, the VA explained that her asserted claim—that she had suffered injuries during her federal employment–was likely governed by the Federal Employees Compensation Act ("FECA"), rather than the FTCA. *See id.*; ECF No. 40-2, Ex. 2 at 1. It advised that she should pursue the administrative remedies under that statute. ECF No. 40-2, Ex. 2 at 1

As a result of the alleged mistreatment at the VA, Plaintiff asserts that she has required frequent medical care and had "serious discussions about her long-term disability and life expectancy." TAC ¶ 62. In particular, the "humiliation and stress of the AIB process . . . has taken a serious toll on" her. *Id*. And given the difficult work environment, colleagues have even remarked that they did not "know how [she had not] had a stroke or heart attack." *Id*. ¶ 49. Yet, Plaintiff asserts that the VA administration has not been sympathetic or reasonable in supporting her health and well-being. *Id.* ¶ 64. Rather, she alleges that a supervisor "announced that the VA is trying to push older employees to retire" and that she "has been . . . pressure[ed] . . . to consider retirement." *Id.* ¶ 65.

## B.    Procedural History

Plaintiff filed her initial complaint in June 2023. ECF No. 1. She then filed two amended complaints in 2024. ECF Nos. 11, 15. Defendants moved to dismiss the second amended complaint on substantially the same grounds as the present motion. ECF No. 20. Plaintiff never filed an opposition to that motion. Instead, Judge Hammer held a conference with the parties to

4

discuss potential further amendments to the complaint.  ECF No. 32.  Judge Hammer noted that the second amended complaint "allege[d] discrimination based upon age, race, and disability," as well as other statutory claims, without identifying any particular statute.  *Id.* at 8–9.  Additionally, the pleading "sa[id] precious little about what plaintiff's exhaustion efforts were."  *Id.* at 9–10. Judge Hammer emphasized that the Court "would appreciate a more clearly pled complaint as to *both the causes of action alleged and any administrative exhaustion*."  *Id.* at 10 (emphasis added). Accordingly, Judge Hammer granted Plaintiff leave to file the TAC.  *Id.* at 21.

Plaintiff then filed the TAC, which contains the same causes of action as in the prior complaint without further explanation.[2]  *Compare* TAC at 27, *with* ECF No. 15 at 26.  In it, Plaintiff asserts claims for (a) violations of FOIA; (b) "Whistleblower/Retaliation (Public Health / Public Safety)"; (c), (d), and (e) discrimination, harassment, and retaliation "Based Upon Age, Race, and Disability"; (f) breach of contract; (g) promissory estoppel; (h) tortious interference with prospective business dealings/opportunities; (i) defamation; (j) intentional infliction of emotional distress; and (k) negligent infliction of emotional distress.  TAC at 27.

### C.    Statutes Relevant to Plaintiff's Claims

Although not identified in the TAC, Plaintiff's claims implicate multiple federal statutes: the Civil Service Reform Act, 5 U.S.C. § 1101 *et seq.*, several anti-discrimination laws, and FOIA, 5 U.S.C. § 552.  As discussed below, these laws all require some form of administrative exhaustion.

### i.    Civil Service Reform Act

The Civil Service Reform Act ("CSRA") "governs the rights and obligations of most federal employees."  *Manivannan v. U.S. Dep't of Energy*, 42 F.4th 163, 169 (3d Cir. 2022).  It

---

[2] The only new assertions in the TAC concerning exhaustion are that (1) Plaintiff brought issues to the attention of VA leadership but had not received a sufficient response and (2) the VA had rejected her FTCA claim.  *See* TAC ¶¶ 73–74.

offers an "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 170 (quoting *United States v. Fausto*, 484 U.S. 439, 445 (1988)). The CSRA achieves this by "channeling certain employment disputes," including "prohibited personnel practices" such as race discrimination or retaliation against whistleblowers through administrative channels. *Manivannan*, 42 F.4th at 170; *see also* 5 U.S.C. § 2302(b) (describing prohibited personnel practices). Ultimately, after pursuing these administrative remedies to the Merit Systems Protection Board ("MSPB"), 5 U.S.C. § 1214(a)–(b), an employee is limited to obtaining judicial review in the United States Court of Appeals for the Federal Circuit, or, in some instances, the other courts of appeals. 5 U.S.C. § 1214(c); *see id.* § 7703(b)(1). Thus, a district court has no jurisdiction to hear claims under the CSRA's remedial scheme. *Roberson v. United States*, No. 24-2036, 2025 WL 1689396, at *7 (M.D. Pa. June 16, 2025), *aff'd*, No. 25-2203, 2025 WL 3459590 (3d Cir. Dec. 2, 2025).

The CSRA provides the "exclusive administrative and judicial review procedures" for claims within its scope. *Manivannan*, 42 F.4th at 169. Importantly, "where the [CSRA] grants an employee administrative and judicial review of a claim, it bars that employee from seeking review beyond what the statute allows." *Id.* at 170 (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10–11 (2012)).

   *ii. Anti-Discrimination Statutes*

Employment discrimination is the only relevant exception to the exclusivity of the CSRA's procedures. A federal employee may bring a lawsuit for employment discrimination through the CSRA or through the mechanisms available under specific anti-discrimination statutes. *See Butler v. West*, 164 F.3d 634, 638 (D.D.C. 1999); *see also* 5 U.S.C. § 2302(d) (exempting several federal anti-discrimination laws from CSRA's exclusivity). If a federal employee pursues a discrimination

claim through the CSRA, she must follow the administrative procedures discussed above and is limited to judicial review in the courts of appeals. And if a plaintiff seeks to assert a claim under federal anti-discrimination laws, she must follow the administrative procedures that govern those claims. These statutes include the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Under these laws, a federal employee's failure to exhaust her administrative remedies before filing suit provides grounds for dismissal under Rule 12(b)(6). *Niehoff v. SPS Techs., Inc.*, No. 16-3301, 2016 WL 6648618, at *4 (E.D. Pa. Nov. 10, 2016) (ADEA); *Nerviano v. Contract Analysis Sys., LLC*, No. 17-4907, 2018 WL 2240533, at *5 (E.D. Pa. May 16, 2018) (Rehabilitation Act); *Davenport v. N.J. Bd. of Pub. Utils.*, No. 18-13687, 2019 WL 2432123, at *3 (D.N.J. June 11, 2019) (Title VII).

### iii. FOIA

FOIA "accords 'any person' a right to request any records held by a federal agency." *Taylor v. Sturgell*, 553 U.S. 880, 885 (2008) (quoting 5 U.S.C. § 552(a)(3)(A)). A district court lacks jurisdiction to hear a claim for denial of materials under FOIA if a plaintiff fails to first appeal that denial to the head of the relevant agency. *Lazar v. Fed. Bureau of Investigation*, 207 F. Supp. 3d 557, 562 (E.D. Pa. 2016) (citing *McDonnell v. United States*, 4 F.3d 1227, 1236 (3d Cir. 1993)).

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

The burden of establishing federal subject matter jurisdiction ordinarily "rests with the party asserting its existence." *Dicke v. Jialin Li*, No. 16-2163, 2017 WL 1011219, at *2 (D.N.J. Mar. 15, 2017) (citing *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). A party may challenge subject matter jurisdiction pursuant to Rule 12(b)(1), and such challenges "may be facial or factual." *Id.* (citing *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir.

7

2009)). Whereas a facial attack "concerns an alleged pleading deficiency," a factual attack "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (citations omitted) (citation modified).

Before the Court may consider a factual attack, the plaintiff must be afforded "an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of [her] jurisdictional contention." *Bautista v. St. Thomas E. End Med. Ctr. Corp.*, No. 19-116, 2020 WL 4677517, at *2 (D.V.I. Aug. 12, 2020) (quoting *Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Ord. of Police*, 920 F.2d 198, 200 (3d Cir. 1990)); *see also Jayme v. MCI Corp.*, 328 F. App'x 768, 772 (3d Cir. 2008) (finding that the plaintiff had "an opportunity ... [of] more than six months . . . to present facts in support of his jurisdictional contention" such that the court could consider the defendant's factual attack). Additionally, when a defendant raises a proper factual attack, "the plaintiff bears the burden of establishing jurisdiction" such that "[n]o presumptive truthfulness attaches to plaintiff's allegations." *Kemp v. Select Portfolio Servicing, Inc.*, No. 17-314, 2017 WL 2876466, at *2 (D.N.J. July 6, 2017) (citations omitted); *see also GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018) (holding that while the defendant has the initial "burden of production to raise a factual challenge," the plaintiff thereafter has the "burden of proof to establish . . . jurisdiction by a preponderance of the evidence").

### B.      Motion to Dismiss for Failure to State a Claim

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted). In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

## III.   DISCUSSION

### A.   Claims Challenged Under Rule 12(b)(1)

Defendants argue that the Court lacks jurisdiction to hear Plaintiff's contract, tort, and whistleblower claims under the CSRA and under FOIA for failure to exhaust.[3] Br. at 13–15, 18–20. In response, Plaintiff contends that the Court may still hear these claims despite any jurisdictional issues. *See* Opp. at 11–16.

#### i.   *Contract and Tort Claims*

Plaintiff raises two contract claims—breach of contract and promissory estoppel—and four tort claims under the FTCA—tortious interference with prospective business dealings, defamation, and intentional and negligent infliction of emotional distress. TAC ¶ 8, at 27. Defendants argue that the CSRA preempts all of these causes of action. Br. at 14–15.

---

[3] Defendants raise both a facial and factual attack on the Court's subject matter jurisdiction. Br. at 12. Defendants' contention that Plaintiff's allegations show her claims to be preempted by the CSRA constitutes a facial attack on the Court's subject matter jurisdiction because they "do[] not contest the complaint's alleged facts, but dispute[] that the facts establish jurisdiction." *Roberson*, 2025 WL 1689396, at *2 (citation omitted). Conversely, Defendants' argument that Plaintiff did not properly exhaust administrative remedies on various claims constitutes a factual attack on the Court's subject matter jurisdiction. *Weeks v. United States*, No. 25-187, 2025 WL 3230712, at *1 (E.D. Pa. Nov. 19, 2025); *see also Phinisee v. United States*, No. 20-5279, 2021 WL 6113374, at *5 (E.D. Pa. Dec. 27, 2021) ("A challenge to subject matter jurisdiction on the ground that a plaintiff failed to exhaust administrative remedies before filing a lawsuit is a factual attack . . . ."). The Court will therefore consider the declarations submitted by both parties as well as the accompanying exhibits in resolving those arguments. *See Priovolos v. United States*, No. 15-151, 2016 WL 3551501, at *3 (E.D. Pa. June 30, 2016).

In determining whether a claim is preempted by the CSRA, the Court must "look to the specific underlying conduct being challenged to determine whether that conduct is an employment action covered by the [statute]." *Manivannan*, 42 F.4th at 172. If the conduct qualifies as a "personnel action" or "adverse action" under the law, a federal employee is limited to the administrative remedies and judicial review provided by the CSRA regardless of whether, as here, the claim is styled as a federal statutory or state common law claim. *See Wilcox v. U.S. Dep't of Commerce*, No. 22-735, 2024 WL 453609, at *3 (E.D. Pa. Feb. 6, 2024) (finding FTCA claims barred by the CSRA); *Baig v. Nuclear Reg. Comm'n*, No. 10-842, 2011 WL 2214660, at *6 (D.N.J. June 6, 2011) ("When a federal employee's state-law claim falls within the purview of the CSRA, it is preempted by the CSRA and CSRA provides the employee with his sole remedy."). Thus, if the lawsuit "is, 'at bottom,' challenging an employment action within the [MSPB]'s jurisdiction, then it must proceed through the review process provided in the CSRA." *Manivannan*, 42 F.4th at 172 (quoting *Elgin*, 567 U.S. at 22). In making this determination, courts need not "apply a 'cramped construction'" of the CSRA's terms given the law's "comprehensive" scope. *Id.* (citations omitted).

The conduct described in the TAC[4] amounts to a "significant change in duties, responsibilities, or working conditions" subject to the CSRA. *See* 5 U.S.C. § 2302(a)(2)(A)(xii). Such a change could arise where the "actions [of the VA] cumulatively create[d] a hostile work environment" for Plaintiff, *Smith v. Dep't of the Army*, No. SF-1221-12-349-W-6, 2017 MSPB LEXIS 3445, at *52 (M.S.P.B. Aug. 7, 2017), or where the VA's conduct "affected [Plaintiff's] ability to do [her] job effectively." *Roberson*, 2025 WL 1689396, at *6. Both appear to be the case here. Plaintiff's allegations suggest that the VA fostered an increasingly hostile work

---

[4] The TAC does not link any of the challenged conduct to any of the asserted contract or tort claims in particular, nor does it explain how the conduct supports those claims. *See* TAC at 27.

environment that prevented her from carrying out her responsibilities and caused her significant physical and emotional stress. *See, e.g.*, TAC ¶ 28 ("[Plaintiff] . . . [raised] concerns about . . . her immediately return[ing] to a work environment with a target on her back[ and] little confidence that she would have any better support from VA management or [HR] . . . ."); *id.* ¶ 41 ("[Plaintiff] has been expected to address and resolve longstanding personnel behavior and personnel issues without sufficient resources . . . ."); *id.* ¶ 42 ("[I]t has become abundantly clear . . . that [Plaintiff] is being targeted, blamed, pressured, and . . . scapegoated . . . for the VA's own failures to manage its personnel and operations."); *id.* ¶ 62 ("The humiliation and stress of the AIB process as set out by [her supervisor] and the VA's unwillingness to be accountable for its failures has taken a serious toll on [Plaintiff]."); *id.* ¶ 63 ("Medical professionals and close contacts have advised [Plaintiff] that her health conditions require serious attention and that she will not get better as long as she is subjected to the hostility and demands of the VA work environment."); ECF No. 50-1 ¶ 5 ("The result of this targeting . . . has been a severe . . . impact on my . . . ability to carry out the critical medical and management services I am responsible for leading."). Therefore, Plaintiff has experienced a "significant change in duties, responsibilities, or working conditions" and this Court lacks jurisdiction under the CSRA to consider her claims. *See Mahoney v. Donovan*, 721 F.3d 633, 636 (D.C. Cir. 2013) (noting that the failure to provide adequate resources to allow an employee to perform her functions "efficiently and effectively" affected the employee's working conditions and was therefore covered by the CSRA); *Manivannan*, 42 F.4th at 173 (finding that an internal investigation for serious misconduct, prompting an agency to place an employee on leave and begin removal proceedings, qualified as a significant change in working conditions under the CSRA); *Gartner v. United States*, No. 16-1680, 2017 WL 658855, at *4 (D. Or. Feb. 15, 2017) (finding that the plaintiff's claims were preempted by the CSRA where his "allegations [suggested]

11

that his working conditions were intolerable" as a result of staffing policies, an improper investigation, unwarranted discipline, and other issues), *report and recommendation adopted*, 2017 WL 1731693 (D. Or. May 1, 2017).

Additionally, much of the complained-of conduct would be individually subject to the CSRA. First, Plaintiff alleges that the AIB investigation caused her "humiliation and extreme stress," and damaged "[h]er basic ability to function." TAC ¶ 60, 62. Such an investigation qualifies as a "personnel action" under the CSRA because Plaintiff alleges that it had a severe negative effect on her working conditions. *See Gartner*, 2017 WL 658855, at *4. Next, while the investigation was pending, she alleges that she was removed from her "role and responsibilities" for three months, TAC ¶ 1, 24, which would be a "significant change in duties" and "responsibilities." 5 U.S.C. § 2302(a)(2)(A)(xii).[5] Finally, Plaintiff's challenge to her (1) downgraded evaluation, (2) bonus reduction, and (3) disciplinary charge, TAC ¶¶ 50, 55–57, likewise implicate "personnel action[s]" under the CSRA. *See* 5 U.S.C. § 2302(a)(2)(A)(iii), (viii), (ix) (including as personnel actions "a performance evaluation," "a decision concerning pay, benefits, or awards," and a "disciplinary . . . action"); *Roberson*, 2025 WL 1689396, at *7 (noting that complaints about performance evaluations are covered by the CSRA); *Myles v. United States*,

---

[5] Plaintiff characterizes this as being "placed on leave" in her declaration. ECF No. 50-1 ¶ 7(b). Under the CSRA, a "suspension" constitutes an "adverse action" (as opposed to a personnel action) if an employee is placed "in a temporary status without duties and pay" for more than fourteen days. 5 U.S.C. §§ 7501(2), 7512(2). There are no allegations concerning whether Plaintiff was placed on leave without pay. Even if this leave qualified as a "suspension," as a VA employee, her claim of an "adverse action" would be subject to the administrative procedures of the Veterans' Benefits Act ("VBA"). *See* 38 U.S.C. § 7461(c)(2)(A). Claims of unlawful adverse personnel actions under the VBA are not subject to judicial review where the action does not implicate a question of professional conduct or competence, i.e., one affecting "direct patient care or clinical competence." *Trujillo v. Capello*, No. 10-23007, 2011 WL 13220771, at *3 (S.D. Fla. May 17, 2011). Plaintiff asserts that she was "placed on leave" because she allegedly created a hostile work environment, TAC ¶¶ 17, 28, not because of any issues with her professional conduct or competence. *See Pathak v. Dep't of Veterans Affs.*, 274 F.3d 28, 32 (1st Cir. 2001) (finding that a suspension for alleged sexual harassment implicated the plaintiff's "actions as an employee and as a supervisor . . . , not . . . clinical competence or direct patient care"). Thus, this Court could not review this action regardless of whether it was subject to the CSRA or VBA.

No. 19-2036, 2025 WL 3190892, at *6 (C.D. Cal. Oct. 17, 2025) (noting that claims pertaining to actions affecting an employee's pay are subject to the CSRA); *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023) ("The CSRA establishes detailed procedures governing federal employee discipline, including methods by which employees may challenge adverse disciplinary actions.").

As the TAC suggests that the various forms of challenged conduct caused a "significant change in [Plaintiff's] duties, responsibilities, or working conditions" and that much of this conduct would independently qualify as personnel actions, Plaintiff's contract and tort claims are subject to the CSRA. This Court therefore lacks jurisdiction to hear these claims.

   ii.  *Whistleblower Claims*

Plaintiff also alleges that she faced retaliation from VA management and HR because she raised health and safety concerns relating to laboratory practices. TAC ¶ 43; *see also* ECF No. 50-1 ¶ 4 ("[A]s I have attempted to hold VA personnel accountable . . . I have been targeted . . . ."). Defendants argue that this Court lacks jurisdiction to review the whistleblower claim. Br. at 13–14.

Retaliation against whistleblowers is a prohibited personnel practice under the CSRA. *See* 5 U.S.C. § 2302(b)(8). Given that Plaintiff asserts that she suffered mistreatment by the VA in response to her raising health and safety issues, her allegations fall "squarely under the 'prohibited personnel practice' provisions of the CSRA." *Yu v. U.S. Dep't of Veterans Affairs*, No. 08-933, 2011 WL 2634095, at *6 (W.D. Pa. July 5, 2011) (discussing a VA physician's claims that he was terminated in response to his public protests about a health issue at the VA), *aff'd*, 528 F. App'x 181 (3d Cir. 2013). Therefore, this Court lacks jurisdiction to hear this claim. *See* 5 U.S.C. § 7703(b)(1).

   iii.  *FOIA Claim*

Plaintiff asserts that Defendants violated FOIA by failing to provide her with the full set of requested materials from the AIB investigation. TAC ¶¶ 21–22. Defendants argue that the Court lacks jurisdiction because Plaintiff failed to administratively appeal the FOIA determination. Br. at 18–20.

Plaintiff has provided sufficient indication at this stage that she appealed the FOIA determination. Although the TAC and opposition brief do not state that she did so, *see generally* TAC; Opp., her counsel's declaration includes a September 2022 letter to the VA Office of General Counsel that appears to be a proper appeal under VA regulations. ECF No. 50-3, Ex. H at 11–16; *see also* 38 C.F.R. § 1.559. Defendants submit a declaration from a VA employee certifying that she could not locate a FOIA appeal "filed by Plaintiff . . . in 2023." ECF No. 40-4 ¶¶ 1–5. But the letter discussed above was sent in 2022, so this declaration does not address whether the VA had a record of an appeal from that year. Therefore, Plaintiff has presented sufficient and unrebutted evidence at this juncture that she did properly appeal the FOIA determination. *See Wragg v. Ortiz*, 462 F. Supp. 3d 476, 497 (D.N.J. 2020) (noting that the Court may "weigh[] the evidence presented by the parties" in resolving a factual attack under Rule 12(b)(1) (citation omitted)). And because Defendants seek to dismiss the FOIA claim solely based on a failure to file an administrative appeal, *see* Br. at 18–20; Reply at 2, the motion to dismiss this claim for lack of jurisdiction is denied.

### iv. *Plaintiff's Arguments Against Dismissal*

Plaintiff raises several arguments to prevent the dismissal of her claims for lack of subject matter jurisdiction. First, she invokes the "entire controversy doctrine," which is a New Jersey Court rule requiring the joinder of "all causes, claims, and defenses related to a controversy." Opp. at 11 (citing N.J. Ct. R. 4:30A). This doctrine "cannot create a basis for . . . federal jurisdiction where none exists." *Huk v. NJ Ale House, LLC*, No. 23-568, 2025 WL 1334616, at *2 (D.N.J.

14

May 7, 2025).  Thus, it does not provide this Court with jurisdiction over the claims that are preempted by the CSRA.

Second, Plaintiff invokes the Administrative Procedure Act ("APA") to argue that the VA "has unreasonably delayed" taking action in response to Plaintiff's various complaints.  Opp. at 12–14.  The CSRA, however, precludes APA actions challenging personnel decisions.  *See Yu*, 2011 WL 2634095, at \*10 (stating that courts have "consistently held that the comprehensive nature of the CSRA demonstrates a clear congressional intent to permit federal review as provided therein 'or not at all'" and collecting cases finding that the CSRA precludes application of APA judicial review).  Any APA claim here is precluded as the conduct challenged is subject to the CSRA.[6]

Third, Plaintiff argues that the VA's failure to timely respond to her notice of FTCA claim allows her to file a personal injury action against the government.  Opp. at 14–15.  The VA's response to her, however, explained that her claim appeared to be covered by FECA, rather than the FTCA.  ECF No. 40-2, Ex. 2 at 1.  And in any event, as discussed above, FTCA claims are preempted by the CSRA where a federal employee alleges injuries arising from a covered personnel action.  *See Wilcox*, 2024 WL 453609, at \*3.  Thus, Plaintiff's purported FTCA claim would need to proceed under FECA or was otherwise precluded by the CSRA.

Fourth, Plaintiff invokes the New Jersey Workers' Compensation Act.  Opp. at 15–16 (citing N.J. Stat. Ann. 34:15-1).  FECA, however, is the "exclusive workers' compensation plan for federal government employees."  *Muse v. VA Hosp.*, No. 18-301, 2018 WL 6599470, at \*3 (W.D. Pa. Dec. 17, 2018) (citing 5 U.S.C. § 8102(a)).  "Where FECA applies, it unambiguously

---

[6] Moreover, Plaintiff does not raise a claim under the APA in the TAC, and she may not amend her pleadings through an opposition on a motion to dismiss.  *See Wilkins v. Navy Fed. Credit Union*, No. 22-2916, 2023 WL 239976, at \*14 (D.N.J. Jan. 18, 2023).

precludes all other liability of the United States either *under a workmen's compensation statute* or under a Federal tort liability statute." *Id.* (emphasis added) (citation modified) (quoting *DiPappa v. United States*, 687 F.2d 14, 17 (3d Cir. 1982)). Additionally, the decision to award benefits under FECA is delegated exclusively to the Secretary of Labor and is not subject to judicial review. *Id.* (citing 5 U.S.C. § 8128(b)). Thus, Plaintiff's reliance on the New Jersey statute does not save her claims from dismissal. Accordingly, Defendants' motion to dismiss the contract, tort, and whistleblower claims in the TAC for lack of subject matter jurisdiction under the CSRA is granted.

### B.   Claims Challenged Under Rule 12(b)(6)

Plaintiff also raises claims for discrimination, harassment, and retaliation on the basis of age, race, and disability without identifying the statutory basis for these counts. TAC at 27. However, based on this description, it appears that Plaintiff is raising claims under the ADEA, Rehabilitation Act, and Title VII. Defendants argue that Plaintiff did not exhaust any administrative remedy with respect to these claims. Br. at 16–18. They also contend that even if she had, Plaintiff has not pled the requisite facts to plausibly state any claim. *Id.* at 18.

Plaintiff has failed to allege that she exhausted her administrative remedies on any of these claims, despite being on notice of the need to do so. *See* ECF No. 32 at 9–10 ("[T]he [second amended] complaint says precious little about what [P]laintiff's exhaustion efforts were. . . . [The Court] would appreciate a more clearly pled complaint as to . . . any administrative exhaustion."). Nor does she contest Defendants' argument that she never filed any charges with the Equal Employment Opportunity Commission. As a result, the Court will dismiss these claims for failure

16

to exhaust. *Niehoff*, 2016 WL 6648618, at *4 (ADEA); *Nerviano*, 2018 WL 2240533, at *5 (Rehabilitation Act); *Davenport*, 2019 WL 2432123, at *3 (Title VII).[7]

## IV.    CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 28th day of April, 2025;

**ORDERED** that Defendants' motion to dismiss the TAC (ECF No. 40) is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Plaintiff's contract, tort, and whistleblower claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction; and it is further

**ORDERED** that the ADEA, Rehabilitation Act, and Title VII claims, to the extent Plaintiff sought to assert them, are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies; and it is further

**ORDERED** that Plaintiff's FOIA claim may proceed at this time; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Opinion and Order to submit a further amended complaint for the purpose of (1) specifically stating the statutes under which she is bringing her discrimination, harassment, and retaliation claims; (2) alleging whether she has undertaken any efforts to administratively exhaust these claims as provided by the relevant statutes; and (3) providing any further factual assertions to support these claims. Insofar as Plaintiff submits a further amended complaint, she shall also provide a form of the amended

---

[7] Alternatively, Plaintiff has not alleged sufficient factual support for claims under any anti-discrimination statute. First, Plaintiff was at one point told by a VA official to "put your big girl pants on." TAC ¶ 47. To the extent that this is the basis of a sex discrimination claim under Title VII, such a "single stray comment is insufficient to create an inference of discrimination." *Chernobai v. Hydraulax Prods., Inc.*, No. 14-6938, 2015 WL 710464, at *3 (E.D. Pa. Feb. 19, 2015). Next, with respect to an age discrimination claim, Plaintiff does not plead that she belongs to the protected class under the ADEA. *See Yue v. Aisner*, No. 24-10413, 2025 WL 2663644, at *3 (D.N.J. Sept. 17, 2025). Finally, the only factual assertion with respect to a disability claim is that Plaintiff has had "serious discussions about her long-term disability," TAC ¶ 62, which does not plausibly show that she has a disability for the purposes of the Rehabilitation Act. *Amoroso v. Bucks Cnty. Ct. of Common Pleas*, No. 13-689, 2014 WL 1284791, at *8 (E.D. Pa. Mar. 27, 2014). Accordingly, even if Plaintiff had exhausted her discrimination claims, she has failed to plausibly allege these counts.

complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

**SO ORDERED.**

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**